## AFFIDAVIT OF SPECIAL AGENT JOHN ORLANDO

1.    I am a Special Agent with the Federal Bureau of
Investigation (FBI).  I am assigned to the Lowell, Massachusetts,
Residence Agency and the FBI's North Shore Gang Task Force.  I
have been an agent with FBI for five years.  At the outset of my
employment with the FBI, I received approximately five months
training in investigating violent and other crimes at the FBI's
academy in Quantico, Virginia.  I have taken numerous training
courses in investigating violent crimes and have received
additional training investigating gang-related offenses.  In my
career, I have investigated many violent crimes, including cases
involving kidnapping.  As a Special Agent, I have participated in
numerous investigations in which I have been the affiant or
otherwise been involved in the application for a search warrant.

2.    I submit this affidavit in support of an application
for a criminal complaint charging HENRY MALDONADO, THOMAS D.
WALLACE, and JOSE GUZMAN with conspiracy to commit kidnapping, in
violation of Title 18, United States Code, Section 1201(c).
Based on the information contained herein, I submit that there is
probable cause to believe that MALDONADO, WALLACE, and GUZMAN
committed the crime set forth in the accompanying criminal
complaint.

3.    I participated in the underlying investigation and have
also spoken with numerous other agents who have participated in
the investigation.  This affidavit does not set out all of the
information developed during the course of the investigation.

Rather, it sets forth facts which I believe sufficient to demonstrate probable cause that MALDONADO, WALLACE, and GUZMAN committed the crime set forth in the accompanying criminal complaint.

## **BACKGROUND OF THE INVESTIGATION**

4.    On July 23, 2012, at approximately 7:05 p.m., a woman identifying herself by name, and referred to herein as "Witness One", called the Lawrence Police Department and reported that a male had been taken against his will from a specific address in Lawrence, Massachusetts.  The caller stated that the male was taken away in a white van by three other males.  Lawrence police officers responded to the scene and spoke with the caller as well as with an individual referred to herein as "Witness Two", the wife of one of the men who was reported abducted.

5.    Witness Two stated that at approximately 6:00 p.m. that evening she was watching television when she heard shouts of "Police" outside of her home.  Witness Two said that she went to the window and saw a car belonging to her husband, "Victim One", in the driveway with a white minivan.  Witness Two said she saw three men wearing masks and black T-shirts with the word "Police" on the back, and that one of the men was holding a gun to her husband's head. Witness Two said the men took Victim One and another man -- whom she knew only by a first name, and who is

referred to herein as "Victim Two" -- away in the white minivan.[1]

6.     Lawrence police officers responding to the scene of the abduction, observed a white zip tie (i.e., a plastic handcuff) on the ground by the side of Victim One's car.  Officers also seized a Global Positioning System ("GPS") tracking device that was affixed to the undercarriage of Victim One's vehicle.  Based upon my training and experience, I know that Lawrence kidnapping crews frequently use GPS devices to track kidnapping targets through personal computers and certain cellular telephones.

7.     The following morning, July 24, 2012, the Manchester, New Hampshire, police department received a call from a Manchester resident reporting that someone had knocked on her door claiming to be a kidnap victim.  Manchester Police responded to the caller's address and found Victim One, who acknowledged knocking on the complainant's door.  Victim One told police that he had been kidnapped the night before in Lawrence, Massachusetts, and that he had been held against his will overnight at 890 Clay Street, in Manchester, New Hampshire.

8.     Victim One was transported to Elliot Hospital for

---

[1]     I know the identities of Victim One, Victim Two, Witness One, and Witness Two.  This investigation is ongoing.  Based on the investigation to date, I believe that exposure of the identities of Victim One, Victim Two, Witness One, and Witness Two would put their safety and the safety of their respective families in jeopardy.  For this reason, I have not included their respective names in this affidavit.  I also know the specific address from where Victim One and Victim Two were abducted, and have not included it herein because it would tend to identify the individuals referenced herein.

treatment for injuries.  I subsequently interviewed Victim One at

the hospital.  I observed burn marks and bruising on Victim One's

body consistent with him having been burned with a hot iron and

beaten.  I also observed marks on Victim One's wrists consistent

with his being bound, as well as blood stains on his jeans that

were laying on the floor near his hospital bed.

9.    Victim One told me that he and his friend, Victim Two,

were returning home from an errand in Victim One's car when they

were followed into his driveway by a white Toyota Sienna minivan

(the "White Toyota Minivan").  Victim One said that, when he and

Victim Two got out of the car, they were confronted by four armed

men wearing shirts with "Police" printed on them.  Victim One

said three of the individuals were armed with pistols and the

fourth with a shotgun, and that they had radios that they

appeared to be speaking into.  Victim One said that, after

identifying themselves as "Police", one of the four men hit him

on the side of his face and forced Victim One and Victim Two into

the White Toyota Minivan.[2]

10.    Victim One said that inside the van the men put a mask

over his head and bound his hands and feet.  Victim One said that

he was periodically assaulted during the ensuing forty minute

ride.  Victim One said he and Victim Two were eventually removed

from the White Toyota Minivan and brought into a house.  Victim

---

[2]    Unlike Witness Two, Victim One said the men were not wearing
masks.

One said that he remained bound and hooded and that, at some point after being taken inside, he was put on the phone with an individual not known to him who threatened to kill him. Victim One said that he was held at that location overnight. He was repeatedly kicked and punched. His body was burned by a hot iron.

11.   Victim One advised that his kidnappers claimed he was someone named "Nene", demanded money, and said that they had the contract for him. Victim One said that he told them he was not "Nene", and eventually provided his kidnappers with identification. Victim One said the kidnappers told him that they wanted money regardless of whether he was "Nene."

12.   Victim One said the assaults stopped at some point during the night and he pretended to sleep. He advised that he eventually freed his hands and feet, removed the hood, and escaped through a window while his abductors appeared to be sleeping. Victim One said he ran for awhile and then began knocking on doors for help.

13.   When Victim One first spoke with Manchester police officers, he advised that he had been held captive at 890 Clay Street in Manchester. Manchester police officers responded to that address shortly after speaking with Victim One. After they arrived at that location, Manchester police officers saw three men leaving 890 Clay Street and stopped them. One of the three men, Victim Two, advised that he had been kidnapped and that the

5

other two men, subsequently identified as HENRY MALDONADO and THOMAS D. WALLACE, were making him walk out with them.  All three men were taken to the Manchester police department.

14.   Victim Two subsequently identified HENRY MALDONADO from a photo array as one of the kidnappers.  Victim Two subsequently identified THOMAS D. WALLACE from a photo array as one of the kidnappers.[3]  Victim Two said that, on July 24, 2012, MALDONADO and WALLACE said that the police were outside just prior to the three of them leaving 890 Clay Street.  Victim Two said that they then removed Victim Two's hood and unbound his hands and feet and told him they were going to walk out together and that Victim Two should tell the police they were all friends.[4]

15.   On July 24, 2012, Julie Maldonado, who identified herself as HENRY MALDONADO's wife, advised me that she and her husband reside in the first floor of 890 Clay Street in Manchester, New Hampshire, the same apartment where Victim One advised he was taken and held.  New Hampshire Division of Motor Vehicle records indicate that a red Monte Carlo, with N.H. license plate number 028423, is registered to HENRY MALDONADO at 890 Clay Street, #1, Manchester, N.H.  A mailbox on the first

---

[3]   At some point on July 24, 2012, WALLACE was released.  He was subsequently picked up after Victim Two identified him as one of the kidnappers.

[4]   Manchester police officers showed Victim One a six-person photographic line-up at the hospital, and Victim One identified the photograph of HENRY MALDONADO and said that he was "pretty sure" that he was one of the kidnappers.  Victim One has not yet been shown a photo array of WALLACE.

floor porch of 890 Clay Street says "Floor 1" and has the name
"Maldonado" on it.

16.   On July 24, 2012, Manchester police officers located a
white Toyota Sienna minivan, bearing MA license plate number
495TS5, and VIN number 5TDKK3DC0BST39893 (i.e., the White Toyota
Minivan), parked behind 890 Clay Street, Manchester, New
Hampshire.[5]  When police asked MALDONADO who owned the White
Toyota Minivan in front of his house, MALDONADO stated that the
van was parked behind his house, that it belonged to his cousin
"J", and that he had nothing to do with it.

17.   After Manchester police officers conducted a protective
sweep of 890 Clay Street, first floor, they also conducted a
protective sweep of the second floor apartment.  JOSE GUZMAN was
found hiding under a pile of clothes in a closet.  Two of the
residents of that apartment -- Janeen Sorrentino and her brother,
Russell Sorrentino - were interviewed and said that they knew
GUZMAN as HENRY MALDONADO's cousin, and that he was in their
apartment without their permission or knowledge.

18.   Victim One indicated that one of the men involved in
the kidnapping had distinctive tattoos on his hand and forearm.
GUZMAN had distinctive tattoos on his right and left forearms and
hands.  Agents showed Victim One photographs of GUZMAN's tattoos
and Victim One identified the tattoos on his right hand and right

---

[5]    The White Toyota Minivan is an Enterprise rental car.  The
investigation of the minivan is ongoing.

forearm and said they were the tattoos of one of the men in the apartment where he was held (i.e., 890 Clay Street, first floor).

19.  On July 24, 2012, the FBI obtained federal search warrants from the District of New Hampshire for 890 Clay Street, first floor, Manchester, N.H.; the White Toyota Minivan; and a cell phone.  Searches of the White Toyota Minivan and the cell phone have not yet been conducted.

20.  Pursuant to the search warrant, the following items, among other things, were seized from 890 Clay Street in Manchester: a loaded Smith & Wesson nine millimeter handgun; police paraphernalia, including a police badge, a police uniform with police insignia, two police hats, gloves, and red police-type lights; a Garmin GPS device; four irons (two traditional irons and two hair irons); Victim One's wallet, license (which was out of the wallet on a table), and keys, as well as two cell phones believed to belong to Victim One and/or Victim Two; and several hundred dollars in cash.[6]

---

[6]    This is not an exhaustive list of the items seized from 890 Clay Street but, rather, examples of some of the items seized.

## CONCLUSION

21.   WHEREFORE, I respectfully suggest that there is probable cause to believe that HENRY MALDONADO, THOMAS D. WALLACE, and JOSE GUZMAN did combine, confederate, and agree with each other, and with other persons, to kidnap Victim One and Victim Two, in violation of 18 U.S.C. § 1201(c).

Signed under the pains and penalties of perjury this 25th day of July, 2012.

_____
JOHN ORLANDO
Special Agent
Federal Bureau of Investigation


Sworn to and subscribed before me this 25th day of July, 2012.

_____
THE HONORABLE MARIANNE B. BOWLER
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS