UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>THOMAS WALLACE<br>Defendant. | Criminal Case No.: 12-10264-RGS |

## THOMAS WALLACE'S EMERGENCY MOTION FOR SENTENCE REDUCTION

Pursuant to 18 U.S.C. §3582(c) and 18 U.S.C. §1345(c), Thomas Wallace ("Wallace") moves, by and through undersigned counsel, to reduce his sentence to time served representing a reduction of 3 years and 4 months from his original sentence of 156 months. The reason for the reduction is that medical staff at Danbury FCI (low) have taken illogical and dangerous actions in the past month in administering Wallace's medications for bi-polar disorder causing him preventable mental instability and anxiety. He is summonsing all his mental resources to keep his bi-polar manifestations from overtaking him and leaving him in a considerably worse condition. His remonstrations with prison medical staff for help are being met with erratic, unreasonable and insupportable decisions. Medication dosage changes recently were made without examination by a doctor or by conducting testing. Psychological counseling is intermittent at best and largely ineffective. Despite his psychosis and declining state, he has maintained compliance with prison rules and regulations and will continue to do so. However, an early release will enable him to receive the medical attention and mental health counseling he requires in order to stabilize. As such, exceptional reasons exist justifying his release.

The COVID-19 pandemic and concomitant social distancing rules have exacerbated Wallace's mania and he finds it a struggle just to maintain stability.  His worry about contracting the virus preys on his mind continually and without control over his environment, his anxieties escalate and he is struggling with depression.  An inmate at the same correctional institution where he is incarcerated has tested positive for COVID-19 and is on life support.

In order to prevent further deterioration of his mental status, Wallace asks this Court to sentence him to time served and to a court-ordered plan to attend out-patient psychological counselling on a regular weekly basis similar to the CARE program.  Wallace's sister, Tyisha Greenwood, is willing to act as his guardian, assuring attendance at all counselling sessions.  He will be able to live with her and she will not permit him to move out of her home.  She is also willing to undertake any other reasonable steps the Court requires.  Her affidavit is attached hereto.

## SENTENCING AND DETENTION BACKGROUND

On July 24, 2012 Wallace was arrested and was denied bail resulting in pre-trial detention for almost 5 years.  Luckily, he advocated for pre-trial detention placement at Strafford County in Dover, New Hampshire where he was able to receive intensive substance abuse treatment similar to the RDAP program administered by the Bureau of Prisons and it has been highly successful.  He also was able to receive psychological evaluation and treatment and was regularly taking medication to control his bi-polar mood swings.  Wallace also took every class Strafford offered and amassed an impressive scholastic record, all of which was detailed in his Sentencing Memorandum, which was filed under seal.

Wallace pled guilty at an early stage in the case to Conspiracy to Commit Kidnapping under 18 U.S.C. §1201(c) delaying his sentencing pursuant to a request by the government.  On

November 9, 2017, he was sentenced to a term of incarceration of 156 months to be followed by 3 years of supervised release.  See Docket entry 1056.  The Court in its Judgment recommended that he serve the custodial portion of his sentence at Devens in order to continue receiving mental health treatment.  The BOP assigned Wallace to Schuylkill instead.

At sentencing, Dr. John Daignault testified in support of his October 25, 2017 written opinion that Wallace was in "significant need for mental health treatment to address his psychiatric disorders."  See Opinion Letter by Dr. John Daignault dated October 25, 2017.  His recommendation was for Wallace (1) to attend psychological therapy on a weekly basis for a period of five years, (2) to receive psychopharmacological consultations on a monthly basis, and (3) be given a neurological examination based on prior concussions and severe migraines. *Id.*

The Court recognized Wallace's need for psychological treatment and ordered him to receive treatment while on supervised released as directed by the probation department.   See Judgment at Docket 1056.

After sentencing, in or around November 27, 2017, the BOP designated Wallace to serve his sentence at Schuylkill FCI, a medium security institution.  No comprehensive medical workup was conducted at Schuykill, to assess a course of action to treat his bi-polar disorder.  In or about April 2018, he was transferred to Fairton FCI remaining there until his transfer to Danbury, a low security correctional institution, in or around January 2019.

Even though the PSR on Wallace documented his mental health diagnosis and history, Wallace has not received weekly psychological therapy or any regular therapy while at Schuylkill, Fairton, or Danbury and he has not been examined or tested to determine if he suffers from CTE as a result of prior concussions.  Nor has he had psychopharmacological consultations on a monthly basis.  As a result, his bi-polar continues to plague him even though he has been

3

inordinately proactive in seeking help from the medical staff. Given the success he achieved at Strafford with his substance abuse and education, it is clear that Wallace has the motivation and ability to treat his mental health problems in the most effective manner but has reached a roadblock because of the failures of the BOPs medical staff to provide proper care.

## **WALLACE'S PROACTIVE STEPS TO MANAGE HIS TREATMENT WHILE INCARCERATED**

Wallace was in Schuylkill and Fairton, both medium security correctional institution, for three years combined. However, because of his good behavior and strong record of participation in educational classes, he was transferred to Danbury, a low security correctional institution, in early 2019. The transfer is proof of his compliance with prison rules and has enabled him to attend school to become an HVAC technician. He is motivated to improve his life after his release by acquiring an employable skill.[1] He no longer has substance abuse problems largely as a result of programs he was able to take while in pre-trial detention at Strafford County. He continued taking substance abuse programs at Schuylkill and has been drug tested numerous times over the last 8 years without any problems. He is making better lifestyle decisions with greater clarity of thought because he is free from substance abuse.

While he has been able to effectively address the substance abuse problems that in part influenced his past criminal behavior, the one thing he cannot improve on his own is his mental health problems. He is as committed to managing his mental health as he is to his rehabilitation efforts. He was prescribed Depakote, an antiepileptic drug, prior to his incarceration, to manage his bi-polar disorder. However, the dosage and re-evaluation of whether a different medication

---

[1] This Court may recall that Wallace had taken numerous classes during his pre-trial detention at Strafford County showing that he was dedicated to rehabilitation. We submitted a letter from his case manager at Strafford listing the impressive and wide cross-section of classes Wallace took at Strafford. The letter was an exhibit to our Sentencing Memorandum. He continued taking classes at Schuylkill and has not interrupted his rehabilitation efforts.

regimen may be more effective after prolonged usage, have eluded him largely because prison medical staff do not appear to be equipped to treat his condition in a more effective manner.

Soon after Wallace was sent to Schuylkill he informed the medical staff that he no longer wanted to take Depakote any longer because he felt "horrible." Medical staff complied with his request without an examination and, in essence, permitted the patient to tell the doctor how to treat him. After a while he began to feel overwhelmed mentally and experienced manic and depressed mood swings.

When he was transferred to Fairton he asked to be placed on medication for his bi-polar disorder and was administered 1000 mg of Depakote daily, the same drug and same dosage as he had taken when he was at Strafford several years beforehand. Once again, there was no real examination of whether Depakote was the most effective drug for him and whether the dosage was the right amount.

When he was transferred to Danbury he started experiencing significant anxiety mostly as a result of the open-floor plan dormitory set-up at the institution. His anxiety continued to build and this month he informed the medical staff that his bi-polar mood swings had become more serious and wanted to be examined. He asked the medical staff to adjust the 1000 mg of Depakote he had been taking to treat his bi-polar disorder and, two days later without an examination or explanation, the medical staff simply ceased administering it to him.

Without proper evaluation or testing of any kind, Wallace was inexplicably prescribed 1250 mg of Depakote, a significant *increase*. Stunningly, the medical staff also gave him a 15 day supply of the 1250 mg Depakote all at once for him apparently to self-administer. Literature about Depakote indicates that stopping it suddenly and re-starting it can cause seizures and other

side-effects. See www.depakote.com. He asked to see a doctor immediately and reached out to the undersigned for assistance.

It has been a near constant effort for him to advocate on his behalf to get medical staff to pay attention to his concerns and to find the proper course of treatment. He has a thick file containing his medical records showing persistent requests for mental health treatment while in BOP custody.  Response by the medical staff has been slow, superficial and ineffective. Psychological counseling is not being administered on any regular basis and he can count on one hand how many times he has talked to a psychologist over the last 4 years.  As a result, his bi-polar and other problems have not improved.

The haphazard and unjustifiable actions recently taken by the medical staff are dangerous and could result in serious complications and possibly death.  It is unquestionable that Wallace's bi-polar has not been effectively managed by medical staff. To the contrary, the illogical cessation of his medication followed by a major dosage increase several days later fall far short of even rudimentary medical care. Wallace is entitled to more efficacious medical treatment and mental health counseling.  This Court should remove him from his current conditions of confinement immediately to prevent a catastrophic result.

Further, the fact that at Danbury  there has already been one inmate death and another's inmate's critical condition as a result of contracting COVID-19 recently has further stretched the medical staff at Danbury thin, leaving even less time for Wallace to receive the medical attention he needs.  His bi-polar psychopathy has kicked into high gear as a result and now more than before he should be given a thoughtful course of action in treating it.  But, as recent events have proven, Wallace is unlikely to get the treatment he requires from the medical staff despite his pro-active attempts to be heard.

## CONCLUSION

Wallace requests that this Court intervene immediately to remove Wallace from a life or death situation and sentence him to time-served under the above-requested conditions.

## CERTIFICATION

Prior to filing the instant Motion, the undersigned counsel contacted the U.S. Attorney's office to consult on their opinion of the substance of the Motion. Counsel has not received a response as of the time of the filing.

The undersigned is also sending a similar request to the Warden at Danbury regarding Wallace, but giving the urgency of the request Wallace files this request simultaneously.

THOMAS WALLACE
By his Attorney,

 /s/ Valerie S. Carter
Valerie S. Carter, BBO # 545412
Carter & Doyle LLP
110 Cedar Street, Suite 250
Wellesley Hills, MA, 02481
781) 235.4400
(781) 235.4401 (fax)
vcarter@carterdoyle.com

DATED: April 21, 2020

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as non registered participants on April 21, 2020.

 /s/ Valerie S. Carter
Valerie S. Carter